In The Matter of The Petition of FER-
TILIZANTES FOSFATADOS MEXICA-
NOS, S.A. and Fertilizantes Mexicanos,
S.A., Petitioners

**and**

Chemical Carriers Inc. (formerly
Energy Chemical Marine Inc.),
Respondent.

No. 90 Civ. 5688 (KTD).

United States District Court,
S.D. New York.

Nov. 26, 1990.

Hill, Betts & Nash, New York City, Peter J. McHugh, Mary T. Reilly, of counsel, and Williams & Connolly, Washington, D.C., for petitioners.

Cadwalader, Wickersham & Taft, New York City, William S. Busch, Kathleen M. McLeod, of counsel, for respondent, cross-petitioner Chemical Carriers Inc.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioners, Fertilizantes Fosfatados Mexicanos, S.A. and Fertilizantes Mexicanos, (collectively "Fertilizantes"), seek an order to confirm an arbitration award and enter judgment thereon pursuant to section 9 of the United States Arbitration Act, Title 9 U.S.C. § 1 *et seq.* Respondent, Chemical Carriers Inc. (formerly Energy Chemical Marine Inc.), ("Chemical"), cross-petitions pursuant to 9 U.S.C. § 10 to vacate the award. A hearing was conducted before me on November 15, 1990. The following constitute my findings of fact and conclusions of law.

## FACTS

This action arises out of a dispute over time charter parties for three vessels; the FFM Virihaure, the FFM Viris, and the FFM Matarengi, (the "vessels"). Chemical owns the three vessels and chartered them to Fertilizantes in 1978 for a term of three years. In 1981, the parties agreed to an

additional term of two years for the charters, and in 1983 the parties agreed to further extensions to the charter parties, albeit in modified form. The last extension also provided that Chemical would have the right of first refusal for all of Fertilizantes' phosphoric acid transportation needs through 1985. Although the charter parties were drafted for each ship individually, they each contained performance and arbitration clauses. Pursuant to the performance clauses, Fertilizantes would receive adjustments or set offs in the hire if the vessels did not meet certain speed and fuel consumption standards. The arbitration clause provided that disputes between the parties would be submitted to a panel of three arbitrators in New York City, and a decision by a majority of the panel would be binding.

## DISCUSSION

Apparently a number of disputes arose and the parties voluntarily complied with the arbitration clauses of the charters. Pursuant to those clauses, Chemical chose its designated arbitrator, Fertilizantes chose its arbitrator, and the two arbitrators so chosen mutually agreed upon the third arbitrator. At the end of arbitration, one of the arbitrators submitted a series of extraordinary dissents from the majority awards. Chemical now seeks to upset the awards in reliance on statements by the dissenting arbitrator, who has accused the other members of the panel of misfeasance and malfeasance. Given the serious nature of the charges, I conducted a hearing on November 15, 1990 to allow Chemical to substantiate its allegations.

In support of its application, Chemical presented the testimony of the dissenting arbitrator, who testified at great length. In addition, the several hundred page dissenting "awards", with several hundred pages of exhibits annexed thereto, were submitted. In opposition, Fertilizantes called the other two arbitrators, who also testified as to the deliberations of the arbitration panel.[1]

The only grounds permitted under the statute to set aside an award are enumerated in 9 U.S.C. § 10:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

After an examination of the entire record, and a review of the dissenter's testimony, I am convinced that there is nothing more to the extraordinary charges levelled by the dissenter than frustration in failing to convince the majority of his position. Specifically, on September 15, 1988, a majority of the arbitration panel found against Chemical and in favor of Fertilizantes on its claims for liability. On January 24, 1989 the majority ruled that Chemical did not have the right to raise additional issues for consideration by the panel. On August 30, 1990, a majority of the panel awarded Fertilizantes $5,728,044.13, with interest to accumulate if the award was not paid within 30 days. In addition, Chemical was assessed its share of the arbitrator fees. The arbitrator named by Chemical concurred in the denial of Chemical's claims, but dissented from each of other the findings in a series of decisions dated November 10, 1988, February 27, 1989 and August 28, 1990.

Using hyperbole and extreme language, the dissenter charges the majority with

---

1. This case should not be viewed as a precedent in any way for inquiry into the deliberations of an arbitration panel. Such matters should remain confidential and inviolate. The only rea-son it was permitted here was because of the seriousness of the charges made by the dissenter against the other two arbitrators.

"bias". The dissenter *inter alia* also claimed that he was excluded from deliberations. I find however, that his claims are not substantiated by the facts. Indeed, portions of the dissenter's testimony became long-winded and unfair broadside attacks upon the majority. In fact, all of the arbitrators had an open line among themselves to voice their concerns, albeit at times in writing. Although the dissenter did not join the majority opinion or assist in its drafting, his positions were made clear at the deliberative sessions. He had a full opportunity to discuss and exchange ideas at those times. Chemical wholly fails to prove any of the statutorily provided grounds for opposing the arbitration award.

This entire affair is quite unfortunate. Indeed, I am convinced that all three arbitrators are honorable men and that nothing untoward occurred during this arbitration. I hope that in the future, feelings of frustration will not lead to such extreme and ill-considered charges.

This memorandum is not intended to indicate that cross-petitioner's position was frivolous within the meaning of Rule 11. Counsel for the cross-petitioner, upon being presented with the dissents, had no other choice than to proceed with their application. It was handled in a thoroughly professional manner and did not descend into an *ad hominem* attack on the arbitrators. Nonetheless, the parties should note that any further litigation in this matter would be of no benefit.

The petition to confirm is granted.

SO ORDERED.